IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EDWARD MORRIS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO: |
| v. ) | _____ |
| ) | |
| STERLING INFOSYSTEMS INC. ) | |
| and STAFFING SERVICE, INC. ) | JURY TRIAL DEMANDED |
| d/b/a SNIDER-BLAKE ) | |
| PERSONNEL, ) | |
| ) | |
| Defendants. ) | |

# COMPLAINT

PLAINTIFF EDWARD MORRIS, JR. files this Complaint and states as follows:

1. Mr. Morris brings this action against Defendants Sterling Infosystems Inc. ("Sterling") and Staffing Service, Inc. d/b/a Snider-Blake Personnel ("Snider-Blake") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

2. Congress passed the FCRA to protect consumers from the harm caused by inaccurate reporting. To this end, the FCRA requires that all consumer reporting agencies ("CRAs") that report criminal background information to employers use

"reasonable procedures to ensure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

3. The FCRA provides special protections when a CRA furnishes "items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment." 15 U.S.C. § 1681k. In these situations, CRAs must either: (1) notify the consumer of the release of the public record information at the time the information is furnished to the user; or (2) establish strict procedures to maintain complete and up-to-date public record information.

4. Defendant Sterling violated Sections 1681e(b) and 1681k of the FCRA when it published incomplete, inaccurate and/or not up-to-date public record information about Mr. Morris in an employment background report. As a result of Defendant Sterling's inclusion of this information in a consumer report, Mr. Morris lost a job and suffered emotional distress.

5. Congress also sought through the FCRA to, among other things, protect consumers by creating heightened standards regulating how employers obtain and use information in consumer reports to conduct background checks on prospective employees. 15 U.S.C. § 1681b(b)(3).

6. The FCRA requires employers to provide certain notices to the subjects of the consumer reports before taking an adverse employment action

whenever that action is based, even just in part, on a consumer report. Specifically, under 15 U.S.C. § 1681b(b)(3):

> in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
> (i) a copy of the report; and
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3)1 of this title.

7. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before an employment decision has been made. Providing the identity of the consumer reporting agency, a copy of the consumer report, and a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete and misleading public-records-based reports.

8. When an employer denies an individual these substantive rights, the individual may sue to redress a breach of these substantive rights and, if successful, be awarded actual, statutory and/or punitive damages. 15 U.S.C. § 1681n.

9. Here, Defendant Snider-Blake violated Section 1681b(b)(3) when it took an adverse employment action against Mr. Morris based on information in a consumer report without first providing him with a copy of the pertinent consumer

report and a statement of his rights under the FCRA, and without providing him with a reasonable opportunity to respond to the information in the report. Defendant Snider-Blake's violation was especially egregious here, as the consumer report contained inaccurate criminal record information that Mr. Morris could not view or dispute before losing his job.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims occurred in this district and division.

## PARTIES

12. Mr. Morris is a resident of Georgia.

13. He is a natural person and a "consumer" as protected and governed by the FCRA, 15 U.S.C. § 1681a(c).

14. Defendant Sterling is a Georgia corporation that conducts business throughout the state of Georgia.

15. Defendant Sterling can be served through its registered agent, Paracorp Incorporated, located at 279 W. Crogan St., Lawrenceville, GA 30046.

16. Defendant Snider-Blake is an Ohio corporation that conducts business throughout the state of Georgia.

17. Defendant Snider-Blake can be served through its registered agent, Peter J. McCabe, located at 850 Euclid Ave., Ste. 405, Cleveland, OH 44114.

## FACTUAL ALLEGATIONS

18. Mr. Morris began working for Snider-Blake in early November 2024 and was assigned to work for Radial in a new Bath & Bodyworks warehouse.

19. As part of his employment, Snider-Blake purchased a consumer report on Mr. Morris from Sterling.

20. The consumer report that Sterling furnished to Snider-Blake was used or expected to be used or collected for the purpose of evaluating a consumer for employment purposes.

21. The consumer report that Sterling furnished to Snider-Blake contained public record information likely to have an adverse effect on Mr. Morris' ability to obtain employment.

22. Snider-Blake received Sterling's consumer report on or about November 20th.

23. Sterling did not notify Mr. Morris of the release of the public record information at the time it furnished the information to Snider-Blake.

24. On November 21st, Snider-Blake texted Mr. Morris: "Hello this is Snider-Blake. Unfortunately your assignment at Radial has been ended. Please do not return, for you will not be able to work. If you would like to search for a new assignment through us, please contact our office. Thanks."

25. Mr. Morris called Snider-Blake upon receiving the text, and Snider-Blake told him that it could not offer him any other employment because of the felony record in his background check.

26. At that point, Snider-Blake had not yet provided Mr. Morris with a copy of his consumer report and a description, in writing, of his rights under the FCRA, as required by statute.

27. Snider-Blake's decision was devastating for Mr. Morris, as he has no felony convictions, and now he has no job.

28. On November 29th – more than a week after Snider-Blake terminated Mr. Morris' employment – Snider-Blake emailed Mr. Morris and attached a copy of Sterling's consumer report:

> Based on the consumer report that you authorized us to obtain in regard to your application for employment, we may be unable to consider you for certain positions with our company.
>
> The name, address and phone number of the consumer reporting company that supplied the report is listed below. The consumer reporting company that supplied the report did not make the decision to take the unfavorable action and cannot give you specific reasons for it.

29. Of course, Snider-Blake had already terminated Mr. Morris' employment when it sent the November 29th email.

30. When Mr. Morris reviewed Sterling's consumer report attached to Snider-Blake's email, he could not believe what he saw.

31. Sterling had reported that Mr. Morris was guilty of a felony for "Possession Of Cocaine With Intent To Distribute" and two misdemeanors for "Obstruction Of An Officers" in a case in Henry County.

32. These convictions do not belong to Mr. Morris.

33. The Henry County court records show that these convictions belong to individuals named Anquan Deuntay Milner and Laquescia Kendrell Redding, and not to Mr. Morris.

34. Even though Sterling knew that the convictions did not belong to Mr. Morris, it still reported to Snider-Blake that they belonged to him.

35. Shortly thereafter, Mr. Morris filed a dispute with Sterling to try to correct the records so he could return to work.

36. Once Sterling completed its investigation, it emailed Mr. Morris: "we were notified that some information on the background report Sterling prepared for our client Snider Blake Personnel was incorrect. As a result, Sterling has amended your report. A copy of your updated report has been provided to Snider Blake Personnel and a copy is enclosed for your records."

37. The updated report no longer contained the inaccurate criminal records.

38. The same day, Mr. Morris texted Snider-Blake: "My criminal background has been fixed. I was wondering can I return to work or do you have anymore positions available?"

39. Snider-Blake responded: "We currently do not have anymore positions available at the moment."

40. The damage had been done. Sterling caused Snider-Blake to believe Mr. Morris was a felon, and to fire him. Snider-Blake did not give Mr. Morris the opportunity to dispute the information before firing him, as required under federal law. And once Mr. Morris successfully disputed the inaccurate information that Sterling reported, Snider-Blake no longer had positions available for him.

## FIRST CLAIM FOR RELIEF

## (15 U.S.C. § 1681e(b))

## (against Sterling)

41. Plaintiff realleges Paragraph Nos. 1-40 as if fully set forth herein.

42. Defendant Sterling violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report furnished regarding Plaintiff.

43.     Defendant Sterling reported information about Plaintiff that it had reason to know was inaccurate.

44.     Defendant Sterling knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

45.     Defendant Sterling obtained or had available substantial written materials that apprised it of its duties under the FCRA.

46.     Despite knowing of these legal obligations, Defendant Sterling acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

47.     Defendant Sterling's violation of 15 U.S.C. § 1681e(b) was willful, rendering Defendant Sterling liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendant Sterling was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

48.     As a result of this conduct by Defendant Sterling, Plaintiff suffered actual damages including without limitation, by example only and as described herein on his behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

**SECOND CLAIM FOR RELIEF**

## (15 U.S.C. § 1681k)

## (against Sterling)

49. Plaintiff realleges Paragraph Nos. 1-40 as if fully set forth herein.

50. Section 1681k of the FCRA requires that when a consumer reporting agency supplies public record information to a user for employment purposes, and such information is likely to have an adverse effect on employment, the CRA must:

> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or
> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

51. Defendant Sterling violated 15 U.S.C. § 1681k by failing to notify Plaintiff that it was reporting public record information about him at the time it furnished such information to his prospective employer, and by failing to maintain strict procedures to ensure that the public record information it was reporting was complete and up to date.

52. Defendant Sterling knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

53. Defendant Sterling obtained or had available substantial written materials that apprised it of its duties under the FCRA.

54. Despite knowing of these legal obligations, Defendant Sterling acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

55. Defendant Sterling's violation of 15 U.S.C. § 1681k was willful, rendering Defendant Sterling liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant Sterling was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

56. As a result of this conduct by Defendant Sterling, Plaintiff suffered actual damages including without limitation, by example only and as described herein on his behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## THIRD CLAIM FOR RELIEF

### (15 U.S.C. § 1681b(b))

### (against Snider-Blake)

57. Plaintiff realleges Paragraph Nos. 1-40 as if fully set forth.

58. Defendant Snider-Blake used a consumer report to take an adverse employment action against Plaintiff.

59. Defendant Snider-Blake violated Section 1681b(b)(3)(A) by failing to provide Plaintiff with a copy of the consumer report and a description of his rights under the FCRA before taking an adverse employment action against him that was based, even in part, on the consumer report.

60. Defendant Snider-Blake's practice violates one of the most fundamental protections afforded to employees under the FCRA and runs counter to longstanding regulatory guidance. (Federal Trade Commission letter dated June 9, 1998, to A. Michael Rosen, Esq., regarding Section 604(b), Section 605, and Section 607 of the FCRA) ("[15 U.S.C. § 1681b(b)(3)(A)] requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information…").

61. Defendant Snider-Blake knew or should have known about its obligations under the FCRA. These requirements are well established in the plain language of the FCRA, in the promulgation of the Federal Trade Commission, and in well-established caselaw. *See Reardon v. Closetmaid Corp.*, No. 2:08-cv-01730, 2013 WL 6231606 (W.D. Pa. Dec. 2, 2013) (certifying class against company for

employment applicants who did not receive pre-adverse action notice); *Singleton v. Domino's Pizza, LLC*, No. DKC 11-1823, 2013 WL 5506027 (D. Md. Oct. 2, 2013) (class settlement for violation of Section 1681b(b)(3)(A)); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 WL 2295880 (S.D. Oh. May 24, 2013)(class settlement for pre-adverse action class); *Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012)("The 'clear purpose' of this section is to afford employees time to 'discuss reports with employers or otherwise respond before adverse action is taken.'") (internal quotations omitted); *Beverly v. Wal-Mart Stores, Inc.*, CIV. A. 3:07CV469, 2008 WL 149032 (E.D. Va. Jan. 11, 2008) ("Simultaneous provision of a consumer report with a notice of adverse action fails to satisfy § 1681b(b)(3)(A) requirement. Accordingly, the Court finds that a reasonable jury could find that defendant violated § 1681b(b)(3)(A) when it took adverse action before it provided plaintiff with a copy of his consumer report."); *Williams v. Telespectrum*, Civ. No. 3:05cv853 (E.D. Va. 2006) ("An employer must provide a copy of the report with "a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report.").

62. Despite knowing of these legal obligations, Defendant Snider-Blake acted consciously in breaching its known duties and depriving Plaintiff of his rights under the FCRA.

63.   Defendant Snider-Blake's violation of 15 U.S.C. § 1681b(b)(3)(A) was willful, rendering it liable under 15 U.S.C. § 1681n.  In the alternative, Defendant Snider-Blake was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

64.   Because of this conduct by Defendant Snider-Blake, Plaintiff suffered actual damages including without limitation, by example only and as described on his behalf by counsel: loss of employment, denial of statutorily required information, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a. An award of actual, statutory and punitive damages;

b. An award of pre-judgment and post-judgment interest as provided by law;

c. An award of attorney's fees and costs; and

d. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**PLAINTIFF hereby demands a jury trial on all claims for which he has a right to a jury.**

DATED: January 13, 2025

By:   /s/ Andrew Weiner
     Andrew L. Weiner
     Georgia Bar No. 808278
     WEINER & SAND LLC
     800 Battery Avenue SE
     Suite 100
     Atlanta, GA  30339
     (404) 254-0842 (Tel.)
     (866) 800-1482 (Fax)
     aw@wsjustice.com

     COUNSEL FOR PLAINTIFF